Please call the next case. Counsel? Yes, may it please the court. Jonathan Easting on behalf of Mr. Abdulgafer again. I'd like to reserve two minutes of my time for rebuttal, please. Mr. Easting, let me remind you this is a recording device. It's not a microphone. Keep your voice up, please. Of course, Your Honor. Thank you. Please proceed. As the Court will recall, Mr. O'Dem was convicted of leaving the scene of an injury accident following a collision on Chicago's North Side. Our brief raises several issues. I'll be focusing on two of those today. First, how the State failed to prove the injury element of offense. That's Issues 1b and c in the brief. And second, how the Court's decision to deny Mr. O'Dem an Oromo-speaking interpreter followed an improper procedure which reached an improper result. That's Issues 3 and 4 in the brief. Your Honor, the legislature required a very specific type of injury under the statute, an injury for which immediate professional medical treatment is required. This requirement is the difference between a mere misdemeanor and a felony. Counsel, how would he know whether or not immediate medical attention was required if he ran away so quickly without investigating? That's also part of what the statute requires, isn't it? Well, there's two separate questions there, I think, Your Honor. First, there's a question as to what is the nature of the injury itself. And the law is very clear that the State has to prove the nature of the injury. My question is, is that the investigation comes first before you can determine what the nature of the injury is? And if a defendant does not stick around long enough to investigate, how can they possibly determine the nature of the injury? I believe, Your Honor, that would raise the question of whether a defendant must know that the other driver is injured in a collision. And that's what it raised in 1C of our brief, where Mr. O'Dem argues that given the legislature's change in the penalty for the statute and given the concern that we're treating potentially innocent conduct as a felony, that some knowledge of the injury on behalf of the defendant is needed. But what is clear under the current law under di jure lamo non, is that there has to be some testimony as to the nature of the injury itself. Was this the kind of injury for which one had to be rushed to the hospital right away? And unfortunately, in this case, the State simply failed to bring that out. There was no specific medical diagnosis that would say what the injury to Mr. Decker actually was. Even at the scene, shortly after the accident, Mr. Decker was not even stunned by his own testimony. He was merely angry. He was ambulatory. He walked over to the other vehicle. He spoke with the driver. He pulled out his cell phone. He called the police. His testimony was that he was in immediate pain down his back? That he was immediately? Yes, Your Honor. That would be showing some injury, but some injury is not enough. We need some – there was simply nothing there from which the jury could draw the inference that Mr. Decker would have been worse off had he not been rushed to the hospital right away. Let me interject because I think I understand the scope of your argument, but I don't think you addressed Justice Hall's issue regarding the investigation element here. Yes, Your Honor. Could you do that for me, please? Of course, Your Honor. If we believe that the purpose behind the statute is fundamentally one about the need to investigate, then we should – because we're imposing an affirmative duty on the defendant, there must be some showing facts giving rise to that affirmative duty. It would be apparently unfair to require someone – Well, there was an accident. They turned the car 180 degrees around. The car was spun around, sure. Yes, but the question then becomes, is this merely the misdemeanor for leaving the scene of an accident, or is it the felony for leaving the scene of an injury accident? And the injury was what makes that difference? Further, Your Honor, this would be easily solved had the State simply brought in medical testimonies to what this injury was. But we can't trust lay jurors to make this sort of diagnosis based on their hunches. This isn't a case like Bill and Wave, where immediately after the accident, the victim had a goose egg welt on her head, from which jurors could infer that there was a back-to-back concussion. If the purpose of the statute is to ensure that the injured is rushed to the hospital right away, then there needs to be some showing that a defendant must have known to bring somebody to the hospital. What we want to avoid is the situation where a party with a hidden injury simply represents to a defendant after an accident that he's not injured at all and doesn't need to go to the hospital. And then when an injury is discovered later on, suddenly the driver has committed a felony because he didn't call an ambulance to the scene. In your scenario, the defendant has been told by the victim that he's all right. We don't have that happening here. We have the defendant leaving the scene before he does any kind of investigation. And I think the facts that the witness testified to was that he was taken to the hospital, he was in the hospital for 13 or 14 hours, and that he has subsequently suffered continuous pain and possibly some lack of use of his arms or something, if I'm recalling what I read correctly. I mean, this is what the jury heard, were his injuries from the result of the accident. It's not a question of the causation of the injuries, Your Honor. It's a question of whether there would have been a deleterious outcome if treatment was delayed. And to correct Your Honor, from the defendant's testimony, what he stated to the driver of the other vehicle was that he was hurt a little bit. That would seem to as much rebut any inference that this was the kind of injury for which one had to be rushed to the hospital right away as to support it, especially given the other external signs. No visible cuts or bruises, no broken bones, he was up, he was walking, he was using his cell phone. Further, Your Honors, in this case, Mr. Adem was denied an interpreter through a flawed process which reached a flawed result. Reversible error occurs when there is a critical stage of trial and counsel is absent during that critical stage. Here, everybody in that courtroom thought Mr. Adem needed an interpreter. Mr. Adem asked for one. The state's attorney requested one. One actually showed up and apparently showed up in the courtroom one day. For the court then to deny him an interpreter at the one hearing where he was not represented by counsel was clearly a mistake. The question of whether something is at a critical stage is whether there are significant consequences for the accused or rights gains and loss. This is why courts have recently in Illinois found that a hearing on a motion to dismiss based on constitutional grounds is a critical stage. An automatic reversal error if counsel is absent. That was the second district in People v. Brunel. And it's similar to the second division of this court's finding that a defendant cannot battle the way of counsel for purposes of a fitness restoration hearing in People v. Esau. Your Honor, let's look at the rights that are at stake when the court is making a decision as to whether to appoint an interpreter. These are the right to confront witnesses, to even be present in the courtroom, and in this case to testify meaningfully or to consult with one's attorney. This division said not long ago in Williams that a defendant's inability to understand the language might be the cause of the failure to assert his rights. For that reason, counsel is necessary at this hearing where the defendant's very ability to understand the language is what is at issue. Further, Your Honors, while under United States v. Chronic, it's automatic reversal error because counsel is absent. It's also clear that the court abused its discretion in denying Mr. O'Dowd an interpreter. This is not a case like those where an interpreter is merely an issue for one witness. What's at issue here was Mr. O'Dowd's ability to understand the entirety of the proceedings and the ability to contribute. This is most noteworthy during his testimony. A simple ability to understand some things is not enough. For example, this division's Williams opinion found that it was clearly reversible error under second quorum claim error where the defendant, because he was partly hearing impaired, understood some but not all of the witness's testimony in the courtroom. Here, Mr. O'Dowd's testimony varies between marginally coherent and completely garbled. At key points of trial, he's asked open-ended questions by his attorney and he answers with things like, paper the license they give me then either. This is when he's trying to explain the circumstances of his arrest on rebuttal. At other points... And the answer is saying what? Paper what? Paper the license they give me then either. The exact quote, Your Honor, is even when he's trying to explain the circumstances of his arrest, it's even they give ticket, paper the license they give me then either. When he's asked about the date of a particular mugshot, an issue that was important and in controversy in trial, his testimony is, sir, I've been in work with my wife problem. They took me 100 times. Same officer. This is the same officer who took me. They take picture of mine 100 times. And that's what the court reporter wrote, managed to construe out of his testimony. We also know that the parties in the courtroom, the court, the state's attorney and the defense attorney, were so confused by what he was saying that they had to call a sidebar to try to parse it out. At that sidebar, they finally agreed that at one point Mr. O'Dowd said the word arrest and that because Mr. O'Dowd had said the word arrest, regardless of whether he understood what arrest as opposed to stop was, otherwise prejudicial evidence came into this trial. As Mr. O'Dowd repeatedly requested an attorney before trial, the court first agreed and then apparently because of the simple requested interpreter before trial. But this is the same individual who wanted to represent himself. Isn't that right, pro se? And he was able to argue back and forth about whether or not he wanted representation of counsel or whether he wanted to be his own counsel. And he was able to communicate that well to the judge. Is that correct? Yes, Your Honor. When he was speaking about, for example, his prior attorney's failure to subpoena witnesses, he talks about the court managed to infer his statement that... You're talking about the public defender? Yes, the public defender, Ms. Rosado. You know, his statement that they no get paper today, as the court does manage to infer that that meant that his witnesses didn't get subpoenaed to appear that day in trial. Your Honor, and the standard is not an ability to speak some English. Even if we use the statutory standard, the issue there is whether one can be understood directly by the jury. And it's clear that Mr. O'Dowd cannot be understood directly by the jury. The court during one-on-one colloquy managed to help him through and sometimes understand what he meant. Still, at other points, the court should have inquired. For example, during this potential waiver of counsel, the court asked him if anybody had forced him to give up his right to counsel. Mr. O'Dowd said something like, yes, you know, representing me. The court at that point should have inquired as to whether counsel was ineffective before moving on to the next question. Instead of doing the inquiry then, the court simply skipped away from the standard rule 401 colloquy and asked Mr. O'Dowd if anybody had physically coerced him to give up his right to counsel. Counsel, how many times did the defendant come before the court? I'm looking at least, it was talking about July 31st of 07, August 28th of 07, September 18th of 07. The court had many opportunities to converse with the defendant before making its determination that he seemed to be okay and that it wasn't necessary to appoint an interpreter. Isn't that what the statute requires of the court? Well, there's two separate questions here. There's the question of what the statute requires and there's the question of what the Constitution requires. And this Court's Williams opinion and the second district's in Escalante have found circumstances where the constitutional requirements are actually broader than the statutory requirement. The statutory requirement says one is necessary for the defendant to be understood directly. The constitutional requirement is when it's necessary in order for a defendant to be able to exercise his substantial rights. And here that includes the right to confer with counsel, to confront witnesses, and to testify meaningfully in his own defense. And yes, Your Honor, the court did make some inquiry into Mr. Adem's language ability. However, the result of most of that inquiry was the court's decision to try to bring in an interpreter. The court held off the colloquy on self-representation at one point because he believed an interpreter was necessary to do so. In the court's own words, how can you represent yourself if you can't read English? There's simply no new facts that were learned by the court that would have led it to change its mind. And further, Your Honor, at the last of those hearings, I believe Mr. Adem's response is limited to one word simply because he no longer believes he's representing himself and it's clear that everybody is expecting counsel to show up on his behalf. This is why the state did not turn over discovery documents to Mr. Adem. So if there had ever been a waiver of counsel, it is clear that on the court's urging, Mr. Adem had revoked that waiver of counsel and the court had accepted that revocation. At that point, the Sixth Amendment attaches. And once the Sixth Amendment attaches, we need no showing of prejudice. However, prejudice is clear throughout this case that there's a misunderstanding of the rights throughout. Let's not be misled. In this case, the assistant public defender represented him and then he was later represented at trial, at pre-trial, as well as at post-trial by a private attorney. Is that not correct? Yes, Your Honor. Then what are, I mean, I don't understand what your last statement meant. Because it's a critical stage, Your Honor. As soon as counsel's, if counsel's absent from a single critical stage, that's automatic reversible error, a case like Bellevue Cone and Chronic v. United States. This is why the second district in the Vernon case, the Vernon case, which both the state cites, the state cites and we cite, are a bribery. In that case, the counsel was absent for a hearing on a First Amendment claim pre-trial. That court found automatic reversible error, even though the defendant later had a trial attorney and that trial attorney later raised a similar argument. Because once a court makes a decision, that court is unlikely to go back on that decision. Further, in the particular context of an interpreter, the prejudice from not having an interpreter starts the day an interpreter is denied. Because then the defendant cannot assist as well in preparing his own defense. He can't point out things to his counsel about the witnesses. Particularly in this case, where, you know, the key alibi witnesses, Mr. Ibrahim, also seems to be primarily a Romo-speaking person. The need for Mr. Adem to be able to communicate facts about that testimony to his attorney is clear. And we can clearly show that Mr. Adem had problems communicating with counsel here. Throughout pre-trial, he believed that simply because a driving without insurance charge was dismissed, that this case would go away as well. That was clearly a mistake, but it's the kind of thing one would expect counsel to easily explain to him. The problem is that Mr. Adem simply cannot understand such explanations without the help of an interpreter. Counsel, I'll give you some additional time at rebuttal, but you need to conclude. Yes, Your Honor. If Mr. Adem had an interpreter, this would have been a completely different trial. His testimony was the linchpin of this case. We know that the attorneys in the courtroom could not understand that testimony. Who knows what the jury thought? This Court should reverse Mr. Adem's conviction or at least reduce it to a class A misdemeanor. Thank you, Your Honor. Thank you. Kelly? Good morning. Janet Mahoney on behalf of the people of the State of Illinois. Twenty-eight times this defendant was before the court. Twenty-eight times the court had an opportunity to view him and determine whether he needed an interpreter or not. At one point, somebody mentioned the possibility that he might need an interpreter, but after hearing him over the course of 28 times, the court determined he did not. If you look at the entire record, it's pretty clear he did not need an interpreter. He knew exactly what was going on here. Remember, it is, is he capable of understanding the English language and is he capable of expressing himself in the English language? He doesn't have to be perfect at it. Your opponent speaks to the difference between the statute and the Constitution. Address that issue, please. He was participating in his defense in this case, which is the constitutional issue that he is raising. And he participated fully. If you look through his testimony at trial, he did not have any trouble expressing himself on direct examination. The only time that he had trouble expressing himself was when he was confronted with something on cross-examination that challenged the validity of what he said on direct examination. He participated in this defense fully. He was capable of understanding the English language and capable of expressing himself. The trial attorney who represented him through many of the pretrial proceedings and through the trial never indicated to the court in any way, shape, or form that he was having trouble with the defendant or that they weren't able to communicate properly. Also, there are other issues. Should we ascribe anything to that? Ms. Mahoney, I apologize. But should we ascribe any significance to that, that his retained counsel never raised the issue with Judge Henley at any point, apparently? Yes, you should, because he didn't have any trouble with him. If he was having trouble communicating with him and developing a defense, certainly counsel would have raised that with the court. Counsel certainly is presumed to know what his responsibilities are. And if you can't develop a defense with your defendant, well, then you better raise that to the court. At one point also, this court questioned this defendant extensively about whether he should proceed pro se. While, again, not perfect, but that's not the standard, is he capable of understanding, is he capable of expressing himself, and is he able to participate in the defense? And this court determined that his understanding of the English language was good enough to represent himself. Is there a slightly different nuance or approach that Judge Henley might have taken in trying to assure for himself that the defendant understood the ramifications of proceeding pro se in this matter, as opposed to the issue of analyzing in the first instance whether an interpreter was going to be required? Do you understand what I'm asking, possibly? I believe that you're kind of getting into an issue that was not raised, was whether he determined that this man was competent enough to proceed pro se. Sure. And I believe, without obviously having that issue been briefed or raised, that based on the questions asked to this defendant and the extensive conversation and defendant's own understanding of the legal system, that the judge did a fine job. Again, remember, the defendant's the one who's up there saying, this is important, I can't receive 365 days in jail. Somebody who doesn't understand the English language is bringing that up to the court. He certainly understood the English language when the victim in this case told him, I called the police. He certainly understood the language then. What concerned me, counsel, is that the Criminal Proceedings Interpreter Act says that the court shall, upon its own motion or that of defense or prosecution, determine whether the accused is capable of understanding the English language and capable of expressing himself in the English language. Where was, and so they're saying pursuant to a motion, either sua sponte or by counsel, where was the determination made? I didn't see anything in the record or in the briefs that indicated that there was any back and forth where the issue was itself whether or not the defendant was capable of understanding and expressing himself in English. Where was that in the record? Maybe I missed it. Well, I believe that there were a couple of court appearances, and actually in front of a couple of separate judges, where somebody might have said, gee, he might need an interpreter, or do you think you need an interpreter? But over the course of time, as they got to know this defendant through repeated appearances in the courtroom, Judge Lacey actually is the one that said, and Judge Lacey is the one who actually tried the case, said he seems to be fine. He seems to be fine. So there was no hearing, no inquiry specifically targeted to that issue that took place at any time throughout these, you said 28 appearances. And no real specific request, nothing in writing, nothing saying let's have a hearing on this. It was just sort of a very casual. Well, but the court can do it on its own motion. Where did that take place? So the defense didn't do it, the prosecution didn't do it, the court didn't do it. Correct. Have they then failed to meet the requirements of the statute? No, it's just that they can. They don't have to. If he seems perfectly fine, they don't have to do anything. Why does it say that? Well, it's not as if everybody who comes into the courtroom, you need to do this analysis. If you seem to be expressing yourself and understanding everything that goes on, there's no need to sui sponte, raise your hand. If you're expressing yourself in a garbled fashion where the lawyers themselves have to go to sidebar to try and figure out what you're saying, if your responses to the court's inquiry are less than coherent, doesn't that indicate a need to give additional attention to, if not a hearing, certainly an inquiry, a targeted inquiry as to the defendant's ability to speak and understand English? It's the State's position that this wasn't garbled language, that he was perfectly capable of expressing himself. His problem was that he was rude and he's belligerent. The State's position that this was not garbled? It was not perfect English, but he certainly was getting his point across. He certainly got his point across. And the behavior of the defendant is what interfered with the proceedings, not his inability to express himself in the English language or understand the English language. Counsel talked about the lack of evidence that the victim required immediate medical treatment. There was plenty of evidence that he needed immediate medical treatment. He was taken to the hospital via ambulance. He remained there for 13 to 14 hours. He had a CAT scan. He had an MRI.  He had a heart attack. He remained in a neck brace for three weeks. He missed over two weeks of work. He was running back and forth between the cars right after the accident. He's on the cell phone reporting his own accident. No evidence that he was running back and forth. And he, being the good Samaritan, went over to check on the defendant. Counsel, your reading of the record is different. Doesn't your record indicate that he left his vehicle? Left his vehicle to check on the defendant. He left his vehicle. He called 911. He sees the defendant still sitting in his car. And he gets out and says, oh, my gosh, are you okay? The victim gets out of his car, goes over, and makes an inquiry. Right. And says, I'm hurt. I called 911. And what does the defendant do? Between the accident and the time he took off, 90 seconds to two minutes. Takes off down the street and drives down the sidewalk. The statute is talking about death or personal injury. Personal injury. Death or personal injury. Or personal injury. We're talking about fairly egregious injuries. No. To necessitate whether or not one needs immediate doctor or hospital care. Isn't that the rest of it? No, no, no. It doesn't need to be egregious injury. It just needs to be injury that require medical attention. And that's exactly what he received in this. As a matter of fact, in the Villanueva case, he had a bruise on his body. He had a goose egg bump, headache, dizziness, and only received ibuprofen. And that court found that that was sufficient to prove personal injury. It does not need to be egregious. It does not need to be death. Only requiring immediate professional treatment in a medical facility or doctor's offices is what B, 11-401B, says. Correct. And that's exactly what happened here. I mean, that even itself suggests that it doesn't need to be so egregious that you can't get yourself to the doctor. It's just that you received medical treatment. But the statute itself includes a requirement that the defendant carry or make arrangements to carry that person to a physician, surgeon, or hospital for medical or surgical treatment. Should that? Should that. Is that not belied by the victim going back and forth between the vehicles and calling in his own injury and his own accident? Calling in the injury and getting the ambulance here is something the defendant never did, which the defendant should have done in this case. That was the defendant's job. As a matter of fact, it's like the victim was the one who did everything the defendant was supposed to do in this case, and the defendant did nothing but drive down the street. I mean, the purpose of this is to encourage people who are causing these accidents, check out what's going on. Give your name. Give your number. Find out if they need help. And we didn't even have any attempt by the defendant in this case. All he did was take off down the sidewalk. Your opponent indicates that the fact that the injuries were not that severe requiring immediate attention and care indicates that this should have been a misdemeanor as opposed to a felony. What's more immediate than being taken to the hospital by ambulance? There's nothing more immediate than that. What's more important than receiving a CAT scan and an MRI? He missed a couple of weeks of work. He was in a neck brace. He had physical therapy. There was suggestion at some point of surgery, but he didn't want to opt for that at this point. There's injury there, and there is no requirement that it be egregious. Unless the court has any other questions? We don't, counsel. Thank you. Thank you. Rebuttal? Brief rebuttal? Yes, Your Honor. Just a couple of thoughts. Your Honors, we're wondering as to what the standards were for when a court must conduct a hearing. This Court's opinion, particularly Williams, answers that. When there is some notice that a defendant has a language ability or some understanding of the proceedings, it is a reversible error if the court does not conduct a detailed hearing. So if this Court's resolution of the critical stage issue is to find that no it is a reversible error under Williams. Also, Your Honor, as to the abuse of discretion on denying him an interpreter. Well, we can only decide whether an interpreter is necessary when a proper hearing is held. Here, a proper hearing was not held simply because the defendant did not have counsel in the courtroom on his behalf. Without such a proper hearing, we can't trust that the court actually exercised its discretion. That doesn't require a hearing. People v. Williams does require a hearing, Your Honor. And that goes beyond the statutory standard. Otherwise, a court could simply do nothing when there is a mute defendant in the courtroom, and that's been rejected by Williams, Escalante, and the Illinois Supreme Court back in the 60s. Finally, Your Honor, as to injury. The legislature knows how to specify what kind of injury is required. They do this all the time with great bodily harm and near bodily injury. They chose a very unusual type of injury in this case that the injury has to be the kind for which immediate treatment is required. That word required means that it's the sort of injury for which there must be a worse outcome if he doesn't get to the hospital right away. And the jury simply did not have facts before which can make that inference. Thank you, Your Honor. Thank you. Thank you, counsel. This matter will be taken under advisory.